UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOANNE JACKSON,

        Plaintiff,

v.

WOODWARD HILLS JOINT VENTURE, ET
AL.,

        Defendants.

_____/

Case No. 16-12752

SENIOR U.S. DISTRICT JUDGE
ARTHUR J. TARNOW

U.S. MAGISTRATE JUDGE ANTHONY
P. PATTI

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [39]

Before the Court is Defendants' Motion for Summary Judgment [39] filed on
December 15, 2017. Plaintiff did not file a response to Defendants' Motion. On May
7, 2018, the Court held a hearing on the Motion at which it gave the parties the
opportunity to submit additional briefing. Plaintiff filed an untimely Affidavit [51] in
lieu of a brief. Defendants filed a Reply [54] on May 29, 2018. For the reasons stated
below, and incorporating the reasons stated on the record, the Court **GRANTS**
Defendants' Motion for Summary Judgment [39] and **DISMISSES** the case.

## FACTUAL BACKGROUND

Plaintiff Joanne Jackson is a 61-year-old African American woman who began
working for Defendant Woodward Hills Joint Venture ("Woodward Hills")[1] as a
Licensed Practical Nurse ("LPN") in September 2000. Woodward Hills is a nursing

_____

[1] Defendant Premier Healthcare Management ("Premier") is the company that
manages Woodward Hills.

center in Bloomfield Hills, Michigan that provides specialized, full-time care to its residents.

An employee, who is alleged to have violated a Woodward Hills policy, is issued a Corrective Action Record ("CAR") that describes the incident. The CAR, which the employee is asked to sign, acknowledges that the employee has discussed the record of her conduct with her supervisor and that lack of improvement may result in termination. Before terminating an employee for misconduct, Woodward Hills typically issues four disciplinary warnings.

In September 2013, Woodward Hills hired Defendant Elizabeth McClellan as its Director of Nursing ("DON"). As the DON, McClellan became Jackson's supervisor. McClellan wanted to "start anew with the employees and judge their work based on her own observations." McClellan Decl. Ex. 3, ¶ 8.

Prior to 2013, Jackson, like other LPNs at Woodward Hills, had been disciplined several times for misconduct. Pl. Dep. 58:24-25, July 26, 2017.

On December 30, 2014, an incident occurred in which three nurses, at least two of whom were white, attempted to assist a patient who was in pain and having difficulty on the toilet. Jackson, apparently troubled with the nurses' treatment plan, testified that she told the nurses that they "should be ashamed" and that it was "scary" that they did know what they were doing. Pl. Dep. 110:7-15. Jackson also stated that she discussed the incident with McClellan. *Id.* at 109:15; Pl. Decl., ¶ 10.

After interviewing the three other nurses – Ashley, Raylene, and Nicole – on December 31, 2014, McClellan determined that Jackson had disrespected her co-workers by commenting negatively about their performance in front of others, including patients and their families. McClellan Decl., ¶ 13. On January 5, 2015, McClellan took her first disciplinary action against Jackson for rude or uncivil behavior regarding her conduct on December 30, 2014. Jackson signed the CAR, acknowledging her receipt of the written warning, but noting that she "gave her co-workers respect" and was "sorry that they took it the wrong way." Ex. 8.

On July 7, 2015, Jackson received a second disciplinary write-up for insubordination and/or refusal to follow the instructions of her immediate supervisor, Lindsay Phillips. Notes attached to the CAR indicate that Jackson raised concerns about Phillips' favoritism for white employees over black employees. Jackson refused to sign the CAR acknowledging that she discussed the record of her conduct with Phillips. Ex. 9.

Jackson testified that sometime in July 2015, other employees told her that Woodward Hills was trying to "clean house" to "get[] rid of all the old nurses" and was falsifying disciplinary documents to that end. Pl. Dep. 55:23; 56:5-10. Jackson stated that, in August 2015, she complained to McClellan about discriminatory treatment. Pl. Decl., ¶¶ 13.

On December 1, 2015, Jackson received a third disciplinary write-up for rude or uncivil behavior. The CAR provides in pertinent part:

> After reviewing your personnel file, there are numerous examples of inappropriate actions and words said to your residents. We need you to be more professional, compassionate and meet your resident's needs in a timely manner. We need to see you learning from these corrective actions and not letting these situations happen again.

Again, Jackson refused to sign the CAR. Ex. 10.

On December 10, 2015, Jackson filed a charge with the Equal Employment Opportunity Commission ("EEOC") against Woodward Hills alleging that, since August 2015, she had received several write-ups from the DON and had been recently assigned a schedule change without notice. Jackson indicated that she believed she had been subjected to discriminatory disciplinary actions based on her race and age. Ex. 12. Jackson testified that she "[n]ever had a problem, for 16 years, so that gave [her] a good indication" that Woodward Hills was harassing her. Pl. Dep. 199:12-14.

On December 22, 2015, Jackson received a fourth, and final, disciplinary warning for carelessness in performance, misrepresentation to the facility, falsifying resident records, and interfering with the work performance of other staff. Again, Jackson refused to sign the CAR. Ex. 13. The final warning required that she complete eLearning Modules within two weeks or face possible termination. Jackson testified that she knew she had to complete the eLearning Modules within two weeks, but still failed to do so. Pl. Dep. 317:19-23; 332:1-3.

On January 25, 2016, Jackson was suspended. The events that preceded her suspension are disputed. Jackson testified that at the start of her shift on that date, she "complained to [the] midnight supervisor to take [her] off the set" and asked to not

work the set. Pl. Dep. 279:11-14; 280:8-9. Jackson's shift supervisor, Teddy, called McClellan about Jackson's request. Without a response from McClellan, Jackson walked away and left the set. *Id.* at 282.

Teddy's notes, however, indicate that Jackson refused a work assignment and walked off the unit without getting a report from the outgoing nurse. Ex. X. Moreover, McClellan said that she tried to speak to Jackson over the phone, but she was yelling and would not let her get a word in; McClellan explicitly told Teddy not to excuse Jackson from the building. McClellan Decl., ¶ 43.

Minutes later, Jackson returned. She met with McClellan that afternoon. McClellan stated that she asked Jackson for an explanation of what had happened, but Jackson did not respond. McClellan Decl., ¶ 52. Jackson was suspended pending further investigation into what had transpired that morning. Smith Decl., ¶ 20; McClellan Decl., ¶ 51. Jackson stated that she was provided no explanation for her suspension. Pl. Decl., ¶ 43.

On January 28, 2016, Jackson was terminated. According to Jackson, McClellan explained she was terminated because of her failure to complete the eLearning Modules. Pl. Dep. 292:18-19. The CAR indicates that Jackson committed several work violations including: refusal to follow the instructions of her immediate supervisor; failure to complete the eLearning Modules; and leaving the unit without

authorization. Yet again, Jackson refused to sign the CAR acknowledging her conduct and termination.[2] Ex. 17.

Also on January 28, 2016, Jackson amended her EEOC claim to include termination and retaliation. The EEOC Intake Questionnaire ("Questionnaire") provides that on January 25, 2016, the "DON stopped [Jackson] at 2:36pm and walked [her] out the building [sic] no paperwork to support that [she was] suspended until further notice." Ex. 16. The Questionnaire further provides that Jackson believed the DON's actions were discriminatory because she received no written paperwork or pink slip. Ex. 16. Jackson received a Right to Sue letter on April 27, 2016.

## PROCEDURAL HISTORY

Jackson commenced this action, *pro se*, on July 26, 2016. Shortly thereafter, Jackson retained counsel, who entered an appearance on the record on September 6, 2016. Jackson, through counsel, filed a Motion to Amend Complaint [15] which the Court granted on January 11, 2017. The Amended Complaint [18] alleges that Defendants Woodward Hills Joint Venture d/b/a/ Woodward Hills Nursing Center, Premier Healthcare Management, Lisa Gant,[3] and Elizabeth McCllelan[4] discriminated

---

[2] Although Jackson refused to sign the CARs, she nevertheless reviewed them with her supervisor. Jackson testified: "I always sign saying that I – I will not sign. I always write, I refuse to sign, at the bottom, not on the signature part." Pl. Dep. 295:13-15.

[3] On November 21, 2017, the parties stipulated to the dismissal of Defendant Lisa Gant. [Dkt. #38].

[4] The Amended Complaint mistakenly refers to DON Elizabeth McClellan as "Betty McClendon." Elizabeth McClellan is the same person as Betty McClendon.

against Jackson on the basis of race in violation of Michigan's Elliot Larsen Civil Rights Act ("ELCRA") and Title VII (Counts I and II), and further alleges that Defendants retaliated against her in violation of the ELCRA and Title VII (Counts III and IV).

Defendants filed a Motion for Summary Judgment [39] on December 15, 2017. Plaintiff failed to file a timely response which was due January 5, 2018. On January 25, 2018, the Court ordered Plaintiff to respond by February 9, 2018. On February 10, 2018, in lieu of a response, Plaintiff filed a Motion to Extend Time to File a Response [47]. Defendants filed a Response [48]. Plaintiff filed an untimely Reply [49] on February 22, 2018, asking the Court for permission to file her response to Defendants' Motion by March 2, 2018. The Court did not issue a ruling on Plaintiff's request.

On May 7, 2018, the Court held a hearing on the Motion for Summary Judgment. Plaintiff's counsel appeared at the hearing. When asked why she did not file a response to Defendants' Motion, Plaintiff's counsel indicated that she was awaiting a ruling on the Motion to Extend [47]. To dispel any further confusion, the Court granted Plaintiff's Motion to Extend [47] and gave counsel until May 14, 2018 to file a response.

Separately, and on the record, Plaintiff voluntarily dismissed Counts I and II against all Defendants and dismissed Count IV against Defendant Premier.[5]

---

[5] The Court clarified Plaintiff's voluntary dismissal with prejudice of Counts I and II in Order [53].

On May 15, 2018, Plaintiff's counsel filed a Response [51] titled "Plaintiff's Affidavit" with no accompanying brief. Defendants filed a Reply [54] on May 29, 2018. Accordingly, before the Court is Defendants' Motion for Summary Judgment [39] on Plaintiff's retaliation claims (Counts III and IV).

## LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the burden of establishing that there are no genuine issues of material fact, which may be accomplished by demonstrating that the nonmoving party lacks evidence to support an essential element of its case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine issue for trial exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Where a plaintiff fails to respond to a motion for summary judgment, the Court must assess whether defendants have met their initial Rule 56 burden – "i.e., whether the facts, as presented by defendants, require[] a determination that they [are] entitled to judgment as a matter of law." *Guarino v. Brookfield Twp. Trustees*, 980 F.2d 399, 407 (6th Cir. 1992).

42 U.S.C. § 2000e-3(a) prohibits an employer from retaliating against an employee because she made a discrimination charge. *Siegner v. Twp. of Salem*, 654 Fed. App'x. 223, 230 (6th Cir. 2016). "Michigan's ELCRA includes a similar provision and [t]he analysis is the same under either act[.]" *Id.* (internal citations and quotation marks omitted).

The *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) tripartite burden-shifting framework governs an employee's retaliation claims based on circumstantial evidence. *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 523 (6th Cir. 2008). Under this framework, Plaintiff first bears the burden of establishing a *prima facie* case of retaliation. *Spengler v. Worthington Cylinders*, 615 F.3d 481, 492 (6th Cir. 2010). To establish a *prima facie* claim, Plaintiff must show that:

> (1) she engaged in activity protected by Title VII; (2) this exercise of protected rights was known to the defendant; (3) defendant thereafter took adverse employment action against the plaintiff, or the plaintiff was subjected to severe or pervasive retaliatory harassment by a supervisor; and (4) there was a causal connection between the protected activity and the adverse employment action or harassment.

*Russell v. Univ. of Toledo*, 537 F.3d 596, 609 (6th Cir. 2008) (internal citation omitted).

If Plaintiff satisfies her initial burden of setting forth a *prima facie* case, Defendants must "articulate some legitimate, nondiscriminatory reason for [their] actions]." *McDonnell Douglas*, 411 U.S. at 802.

Finally, if Defendants "succeed in doing so, then the burden shifts back to Plaintiff to demonstrate that Defendant[s'] proffered reason was not the true reason for the employment decision." *Spengler*, 615 F.3d at 492 (internal citation and quotation marks omitted).

Defendants challenge only the fourth element of Plaintiff's retaliation claim, arguing that there is no causal connection between her protected activity – filing the initial EEOC charge on December 9, 2015 – and her termination.

Although Plaintiff has not responded to Defendants' argument, her Affidavit and counsel's argument at the hearing suggest that she contends that her retaliation claim is premised not only on her initial EEOC filing, but also on her discussion with McClellan on December 30, 2014.

Other than the fact that Plaintiff raised this argument for the first time at the hearing, thereby depriving Defendants of notice, the problem with the argument is that neither her deposition nor her affidavit show that she complained to McClellan about facing discrimination; she simply "asked why [she] was singled out." Pl. Decl., ¶ 10. Although Title VII protects "complaints to management and less formal protests of discriminatory employment practices," as well as the filing of "discrimination charges with the EEOC," *see Laster v. City of Kalamazoo*, 746 F.3d 714, 730 (6th Cir. 2014), Plaintiff has failed to demonstrate how her conversation with McClellan about the December 30th incident (which the Court presumes was an investigatory interview) constitutes protected activity.

Even if the Court were to consider Plaintiff's conversation with McClellan as protected activity, Plaintiff has failed to establish a causal connection between her complaints and her discipline and termination. "Title VII retaliation claims require proof that the desire to retaliate was the but-for cause of the challenged employment action." *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 352 (2013).

Plaintiff's retaliation claim, however, is based on pure speculation. *See Dean-Lis v. McHugh*, 598 Fed. App'x 412, 414 (6th Cir. 2015). To the extent that she argues that the temporal proximity between the protected activities and disciplinary actions establishes a causal connection, the Sixth Circuit has repeatedly held that temporal proximity alone is insufficient to satisfy this element. *See Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 737 (6th Cir. 2006) (noting that temporal proximity must be coupled with other indicia of retaliatory conduct). In light of her well-documented disciplinary record, Plaintiff has offered no evidence to demonstrate that Defendants would not have terminated her employment had she not complained to McClellan or filed an EEOC charge.

Assuming, *arguendo*, that Plaintiff could establish a *prima facie* retaliation claim, Defendants have clearly articulated that they disciplined, and ultimately terminated, Plaintiff because of her record of misconduct and unprofessionalism.

Plaintiff fails to rebut Defendants' nondiscriminatory reasons for their actions. An employee can show that her employer's proffered reasons were a pretext for discrimination by demonstrating that: "(1) the employer's stated reason for

terminating the employee has no basis in fact, (2) the reason offered for terminating the employee was not the actual reason for the termination, or (3) the reason offered was insufficient to explain the employer's action." *Spengler*, 615 F.3d at 493 (internal citation and quotation marks omitted).

Here, Plaintiff attempts to demonstrate pretext via the first method – "by attacking the credibility of Defendants' proffered reason." *Seeger v. Cincinnati Bell Tel. Co., LLC*, 681 F.3d 274, 285 (6th Cir. 2012). Plaintiff submits that Defendants falsified documents and failed to conduct thorough investigations.

However, where Defendants demonstrate an "honest belief in [their] proffered reason," a finding of pretext is unwarranted. *See id.* (quoting *Joostberns v. United States Parcel Servs., Inc.*, 166 Fed. App'x. 783, 791 (6th Cir. 2006)). "The key inquiry is whether the employer made a reasonably informed and considered decision before taking an adverse employment action." *Smith v. Chrysler Corp.*, 155 F.3d 799, 807 (6th Cir. 1998).

Defendants held an honest belief that Plaintiff committed several policy violations, including demonstrating rude and unprofessional behavior toward staff and patients, abandoning patients, and failing to complete required training. Plaintiff's "bare assertions" that Defendants' reasons for termination have no basis in fact are insufficient to call their "honest belief into question." *Seeger*, 681 F.3d at 285.

Viewing the evidence in the light most favorable to Plaintiff, the Court concludes that Defendants made a reasonably informed and considered decision

before terminating Plaintiff. Defendants conducted interviews and investigations on each of the incidents that gave rise to the disciplinary action they took against Plaintiff. Plaintiff received multiple warnings that such disciplinary action could result in termination and admitted that she did not complete the eLearning training Modules as required. Plaintiff has not shown that Defendants' "decision making process was unworthy of credence." *Id.* (internal citation omitted). Accordingly, Plaintiff has failed to satisfy her burden of establishing pretext.

### CONCLUSION

For the reasons stated above, and incorporating the reasons stated on the record,

**IT IS ORDERED** that Defendants' Motion for Summary Judgment [39] is **GRANTED**.

**IT IS FURTHER ORDERED** that this case is **DISMISSED with prejudice**.

**SO ORDERED**.


                                           s/Arthur J. Tarnow
                                           Arthur J. Tarnow
Dated: June 11, 2018                Senior United States District Judge